GEORGIA STATE BOARD OF EXAMINERS IN OPTOMETRY v. FRIEDMANS' JEWELERS INCORPORATED.

No. 11465. December 4, 1936. Rehearing denied December 15, 1936.

*Pierce Brothers* and *Benjamin E. Pierce Jr.*, for plaintiff.

*Hammond, Kennedy & Kennedy* and *Hamilton Phinizy*, for defendant.

*Robert Rosenberg*, for person at interest, not party.

Hutcheson, Justice. The Georgia Board of Examiners in Optometry brought a petition against Friedmans' Jewelers Inc., pursuant to authority granted in the Code, § 84-1111, seeking to enjoin the defendant from practice of optometry in violation of the statutes of this State defining and regulating such practice. Upon the hearing the court refused to grant an injunction, and rendered the following judgment, which substantially sets forth the undisputed facts: "It appears that the defendant is a corporation operating a retail jewelry store in the City of Augusta, Georgia; that the defendant has equipped one department of its store with supplies, materials, tools, and machinery for the filling of prescriptions for eyeglasses and for repairs thereto; that a duly licensed optometrist is employed by the defendant at a stated salary, and that he has full charge of the Optical Department for Friedmans' Jewelers Inc., and does all the grinding of lenses, repairing of glasses, and fills all prescriptions for eyeglasses that are filled in defendant's store, and the licensed optometrist sells glasses prepared as aforesaid to customers of the defendant. It also appears that this duly licensed optometrist, Julian C. Thomas, is furnished with all the necessary equipment for the practice of optometry, and that Thomas examines the eyes of all patients and issues prescriptions for those patients whose vision is found to be defective, but no charge is made by Thomas for the examination or the preparation of prescriptions, and that the patients are un-

der no obligations to purchase eyeglasses from Friedmans' Jewelers Inc., or to have the prescriptions, so prepared by Thomas, filled by the defendant. It further appears that Thomas has full and exclusive control, without direction from the defendant or any of its officers or employees, in his practice of optometry, and in the purchase of supplies, instruments, and materials to properly examine the eyes and to properly manufacture glasses. The defendant does not direct Thomas in the way he pursues the practice of optometry nor in the kinds of prescriptions he gives. These matters are left entirely in the judgment of said Thomas. It further appears from the evidence, without dispute, that none of the officers, managers, or other persons connected with the defendant corporation undertake to perform any of the work in the optical department, nor do they undertake to assist in, or do themselves examine eyes, or give prescriptions or advice to patients." The court then construed the statutes regulating and defining the practice of optometry to be for the sole purpose of protecting the public health and to prevent the unskillful examination of eyes and furnishing of glasses to the public by persons unskilled in the examination of eyes. The court held that the method of operation by the defendant was not inhibited by the statute, and that from the evidence it did not appear that the public health or safety would be jeopardized through the method of operation shown by the evidence, and that the defendant was not engaged in the practice of optometry as defined by the statute. The petitioner excepted.

It must be conceded at the outset that a corporation as such can not itself qualify, or be licensed, to practice optometry. This is self-evident. The question to be determined is, not whether a corporation as a fictitious legal entity can practice optometry, but whether the employment of a registered and licensed optometrist is such practice of optometry as is inhibited by the statute. In other words, is the defendant corporation, under the record in this case, engaged in the practice of optomery within the meaning of the statutes of this State regulating and defining the practice of optometry? In the decisions of other States on questions similar to that involved here there is a sharp conflict of opinion. This is no doubt due largely to variation in the language contained in the various statutes construed. So let us examine first into the under-

lying purposes of the statutes of this State (Ga. L. 1916, p. 85; 1931, pp. 7, 37; 1933, p. 202), which, so far as pertinent to the question here presented, are as follows: "All persons engaged in the practice of optometry or who wish to begin practice of same shall make application through the Joint-Secretary, State Examining Boards, to the State Board of Examiners in Optometry, to be registered and for a certificate of registration. Such registration and certificates shall be granted to such applicants upon compliance with the conditions contained in subdivisions (1) and (2) of this section." Subdivision (1) pertains to registration of applicants holding licenses from other States. "(2) Any other applicant for registration under this chapter shall be required to pass an examination as hereinafter provided. Such applicant shall be 21 years of age, of good moral character, possessed of an education equal to a two-years high-school course, and shall hold a diploma from a school of optometry requiring a two-years attendance course and satisfactory to this board. The said board shall examine all applicants shown to have the necessary qualifications, as above set forth, in the following subjects: ocular anatomy and physiology; theoretic optics; theoretic and practical optometry, including normal and abnormal refractive, accommodative, and muscular conditions of the eye as applied by recognized methods of subjective and objective optometry when determining the need of glasses. When the applicant shall attain an average standing of 75 per cent. on all subjects submitted, he shall be deemed to have passed satisfactorily, and shall be given a certificate of registration, which certificate, and any other certificate provided for in this section, shall operate as a license to practice optometry when it shall have been recorded in the office of the clerk of the superior court of each county in which said person practices." Code, § 84-1105. "It shall be unlawful for any person to practice optometry in this State unless he shall have first obtained a license from the State Board of Examiners and filed same with the clerk of the superior court of the county in which such practice is conducted." § 84-1107. "Nothing in this chapter shall be construed to apply to physicians and surgeons duly licensed to practice medicine, nor to prevent persons from selling spectacles or eyeglasses on prescription from any duly qualified optometrist or physician, nor to prevent any person or persons selling glasses as

articles of merchandise or from using test cards in connection with the sale of such glasses at a permanently located place when not trafficking or attempting to traffic upon assumed skill in optometry; nor shall anything in this chapter be construed to authorize any registered optometrist to prescribe or administer drugs or practice medicine or surgery in any manner as defined by the laws of Georgia; nor shall the same be construed to authorize any such person to use the title of 'M. D.' or any other title mentioned in section 84-901 or 84-906." § 84-1108. "The Board of Examiners in Optometry shall refuse to issue its certificate of registration and may revoke its certificate of registration issued to any person who is . . guilty of highly unprofessional conduct." § 84-1110. "The practice of optometry by any unregistered or unlicensed optometrist is hereby declared to be a menace and a nuisance, dangerous to the public health and safety, and the Board of Examiners in Optometry shall promptly abate such practice by writ of injunction filed in the county in which such practice is conducted, and the writ shall be issued and the practice enjoined unless it shall be made to appear that such practitioner is licensed and registered. The board is hereby empowered to file such petition and prosecute the said action, and it is made its duty to do so." § 84-1111. The Code declares: "Any person who practices, offers or pretends to practice, or holds himself out as eligible to practice optometry, and who is not legally registered and licensed, shall be guilty of a misdemeanor, and shall be punished as for a misdemeanor for each day or fraction of a day that he practices in violation of chapter 84-11." § 84-9917.

Manifestly, from the very provisions of the statutes under which the board is proceeding in the instant case, the purpose is to protect the public health and safety, and not to protect the interests of, or create a monopoly for, those persons engaged in the practice of optometry. The sole purpose of the statutes appears to be to protect the public against injury or harm which might result if ignorant, unskillful, or incompetent persons were permitted to offer their services as optometrists. If the health and safety of the public may be as well protected by the manner of operation as disclosed by the record in the present case, we see no reason for the abatement thereof. It is most earnestly contended by the board, however, that the practice of optometry is a "learned profession,"

as is the practice of law and medicine. The distinction between the so-called "learned professions" and other professions, trades, or callings, has been continuously recognized by the courts. Webster's International Dictionary defines the word "profession" as "that of which one professes knowledge; the occupation, if not mechanical, agricultural, or the like, to which one devotes oneself; the business which one professes to understand and to follow for subsistence; calling; vocation; employment, as a profession of arms, the profession of a clergyman, lawyer, or physician, the profession of lecturer on chemistry." In a note it is said that "The three professions, or learned professions, are especially, theology, law, and medicine." This distinction between the "three professions" and others is not derivable from statutory enactments, but is one recognized and established through time, because of the inherent difference between these professions and those of ordinary vocations and callings. It is because of these inherent differences that it is against public policy for a corporation to employ attorneys to practice for it and in its stead. See *Boykin* v. *Hopkins,* 174 *Ga.* 511 (162 S. E. 796). The practice of law, because of its high standards, and the peculiar relationship existing between attorney and client, is not subject to commercialization. If it were, its high purpose and functions would be degraded, and the public would suffer immeasurable injury therefrom. Because of this relationship between attorney and client, an attorney is forbidden to testify in court to the confidential matters and communications made to him by his client. In this respect it has a kinship to the relationship of husband and wife. Optometry itself is a profession of ancient standing (Martin *v.* Baldy, 249 Pa. 253, 94 Atl. 1091); but, so far as we are aware, it has never been recognized to be a "learned profession" comparable to that of law and medicine, except by reason of the construction placed upon a particular statute regulating the practice thereof. The word "profession" literally may be applied to any calling or vocation requiring special knowledge of a branch of science or learning; but historically, and in its legal application to the present case, it has a meaning peculiarly applicable to the so-called "learned professions."

It is true that the science of optometry requires skill, learning, experience, and judgment, beyond that usually needed in mechan-

ical professions. "On the other hand, it is essentially a mechanical art which requires skill, manual dexterity, and a knowledge of the use and application of certain mechanical instruments and appliances designed to measure and record the errors and deviations from the normal which may be found in the human eye, rather than the knowledge or learning appropriate to professions or callings which deal with causes and conduct rather than with conditions and effects. It is in its nature empirical rather than learned. The principal concern of the State, therefore, is not so much to protect the calling itself, as is the case in law and medicine, where the public interest may demand greater mental and cultural qualifications than are needed to permit one to perform the duties of an optometrist, as it is to see that none may practice that art who are not qualified to do so without detriment to the public." Dvorine v. Castelberg Jewelry Corporation (Md.) (185 Atl. 562, 564). By the statute of this State applicants for license to practice optometry are required to be examined on ocular anatomy and physiology; however, the requisite knowledge of these subjects is not for the purpose of knowing how to treat the eye for disease etc., but to better aid the optometrist to determine whether the defective sight is due to disease, nerve impairment, or physical disability, or consists of purely structural or mechanical defects correctible wholly or partially by the use of lenses. Any claim that optometry is a profession comparable to that of law and medicine must necessarily be based upon its kinship to the medical profession. That it is separate and distinct therefrom has been practically universally recognized by the courts of last resort of the various States. In E. E. Arrington's History of Optometry, (1929), page 24, it is said: "Ocular refraction is not and never has been a part of medicine, either by inheritance, basic principles, development, or practice. It is an applied arm of optical science, resting upon the work and discoveries of physicists and opticians through the ages down to modern times. It does not treat the eye, whether in health or disease, but adapts the light waves which enter the eye, in accordance with optical principles, so as to produce focused and single vision with the least abnormal exertion on the part of the eye. And, finally, its distinction from and independence of medicine have been affirmed by Supreme Court decisions in every case in which the question has been brought up for

adjudication." As defined by the statute of this State, " 'Optometry' or the practice thereof is the employment of any means, other than the use of drugs, for the measurement of the powers of vision and the adaptation of lenses for the aid of same. Code, § 84-1101. So we conclude that the practice of optometry is not, outside of statutory enactments, recognized as comparable to the "learned professions," and that the employment of a qualified optometrist by a corporation is not against public policy.

Do the statutes of this State regulating and defining optometry and the practice thereof take it without this general rule? We have previously quoted the definition included in the Georgia statute. Nothing in this definition would appear to take from or add to the general conception that optometry in its nature is primarily a mechanical profession. Section 84-1108, supra, prohibits an optometrist from using the title "M. D.," or any other title mentioned in sections 84-901 and 84-906. These two sections are from those defining and regulating the practice of medicine, and the titles mentioned therein are, "M. D.," "Oph.," "D.," "Dop.," "Surgeon," and "Doctor," standing either alone or in connection with other words, or any other words or abbreviations to his name, indicating that such person is engaged in the treatment or diagnosis of disease, defects or injuries of human beings. This apparently excludes optometry from its alleged kinship to the medical profession. Finally, the very section of the statute under which the board is proceeding in the instant case is, we think, conclusive evidence that the interpretation we have placed upon the statute is correct. It provides for the abatement by injunction of "the practice of optometry by any unregistered or unlicensed *optometrist*" (italics ours), and provides that such practice is dangerous to the public health and safety. A corporation can not be an optometrist. So it would seem that the legislature expressly intended to abate the practice of optometry by individuals not qualified and licensed so to do, and did not deem the employment of a qualified and licensed optometrist by a corporation inimical to the public health and safety, and did not intend to extend the practice of optometry from that of a mechanical art to that of a "learned profession" comparable to law and medicine. This being so, we see no reason why the corporation in the present case by employing a qualified and licensed optometrist is practicing op-

tometry contrary to the provisions of the statutes, or that its acts under such circumstances will so endanger the public health and safety as to thwart the purposes of the statutes. It follows that the court did not err in holding, under the undisputed facts and the terms of the statutes, that the defendant is engaged only in selling spectacles on prescription of the duly licensed optometrist, and that the only optometrist employed is practicing optometry within the meaning of the statutes of Georgia, and that the defendant is not engaged in the practice of optometry within the meaning of the statutes. Inasmuch as we are of the opinion that the reasons given for the conclusions reached are sufficient, we do not deem it expedient or necessary, or of useful purpose, that any extended discussion or analysis of the decisions of other jurisdictions be undertaken, but we cite the following among the authorities pertaining to the questions herein discussed. State v. Kindy Optical Co., 216 Iowa, 1157 (248 N. W. 332); Funk Jewelry Co. v. State ex rel. LaPrade (Ariz.) (50 Pac. 2d, 945); Eisensmith v. Buhl Optical Co., 115 W. Va. 776 (178 S. E. 695); State v. Goldman Jewelry Co., 142 Kan. 881 (51 Pac. 2d. 995, 102 A. L. R. 334); Eddy v. West Virginia Board of Optometry, 116 W. Va. 698 (182 S. E. 870); Pacific Employers Ins. Co. v. Carpenter, 10 Cal. App. 592 (52 Pac. 2d. 992); Teseschi v. Mathis, 116 N. J. L. 187 (183 Atl. 146), distinguished in Dvorine v. Castelberg Jewelry Corporation, supra; Attorney-General v. Kindy Optical Co., 265 Mich. 265 (251 N. W. 343); Saunders v. Swann, 155 Tenn. 310 (292 S. W. 458); Harris v. State Board, 287 Pa. 531 (135 Atl. 237); Betzs v. Maier, 12 Tex. Civ. App. 219 (33 S. W. 710); Scandron's Sons Inc. v. Susskind, 229 N. Y. Supp. 209 (132 Misc. 406); People v. Smith, 208 Ill. 31 (69 N. E. 810); New Jersey State Board v. Kresge Co., 113 N. J. L. 287 (174 Atl. 353). *Judgment affirmed. All the Justices concur.*