22109. PEARLE OPTICAL OF MONROEVILLE, INC. et al. v. STATE BOARD OF EXAMINERS IN OPTOMETRY.

Argued July 9, 1963—Decided October 10, 1963—Rehearing
denied November 7, 1963.

*Heyman, Abram, Young, Hicks & Maloof, Joseph Lefkoff, William G. Grant, Edenfield, Heyman & Sizemore,* for plaintiffs in error.

*Eugene Cook, Attorney General, G. Hughel Harrison, William L. Grayson, Assistant Attorneys General,* contra.

*Rogers, Magruder & Hoyt,* for party at interest not party to record.

QUILLIAN, Justice. ■ The issue as to whether the General Assembly was authorized in the exercise of the State's police power to create the Georgia State Board of Examiners in Optometry and clothe that body with power to control the practice of optometry within the State and to formulate rules and regulations designed to effectuate this aim depends upon whether optometry is a learned profession vitally affecting the public health. Atlantic Coast Line R. Co. v. City of Goldsboro, 232 US 548, 558 (34 SC 364, 58 LE 721); McNaughton v. Johnson, 242 US 344 (37 SC 178, 61 LE 352); *Holcomb v. Johnston,* 213 Ga. 249, 252 (98 SE2d 561); *Hortman v. Yarbrough,* 214 Ga. 693 (107 SE2d 202).

■ Optometry is a learned profession because a valid statute of the State declares it to be. We reject the contention of the defendants that the declaration is a mere effort on the part of the General Assembly to establish a fact by legislative fiat. It is the province of the law making body to adjudge the sufficiency of the factual foundation necessary to support the statute it enacted into law. *Bachlott v. Buie,* 158 Ga. 705, 711 (124 SE 339); *Holcombe v. Ga. Milk Confederation,* 188 Ga. 358 (5), 369 (3 SE2d 705).

And were the rules not adhered to, the contention would still be without merit. This is apparent because the Act of 1956 does not merely denominate optometry a learned profession but recites facts amply supporting that conclusion. The Act described the involved processes employed by the practitioners of the profession in diagnosing and treating abnormalities of the human eye, in such terms as to leave no room for doubt that the practice of optometry requires much learning. The Act of 1953 (Ga. L. 1953, pp. 114, 116) prescribes as the educational standards for admission to the practice of optometry: "possessed of a high school education . . . or the equivalent thereof . . . have completed not less than two years of preoptometry college work in a college of arts and sciences approved by the board, or the equivalent thereof . . . and hold a certificate of graduation from an accredited college or university teaching optometry acceptable to the board requiring a course of study therein of at least three school years." From the description of the practice contained in the law relating thereto it is also evident that there is the close and confidential relationship between the practitioner and patient that separates the learned "professions of the law" from other pursuits or professions that may require great learning or scholarship, but are not classified as learned professions. "The relation between the optometrist and his patient is personal and confidential and subject to reasonable legislative regulation in the common interest." Abelson's v. N. J. State Bd. of Optometrists, 5 NJ 412, 425 (75 A2d 867, 22 ALR2d 929).

The defendants insist that the Act of 1956 (*Code Ann.* § 84-1101) insofar as it provides—"Optometry is defined as the art and science of visual care and is hereby declared to be a learned profession"—is violative of Art. I, Sec. I, Par. XXIII of the Georgia Constitution reading: "The legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided." In this connection, the defendants insist the holding of *Ga. State Board of Examiners in Optometry v. Friedman's Jewelers,* 183 Ga. 669 (189 SE 238), written in 1936, that optometry was not a learned profession, was an adjudication of that

matter binding on the legislature and precluding it from ever declaring the contrary.

The very provision of the Constitution the defendants allege was violated is designed to preserve inviolate the separation of the legislative and the judicial branches of the government, and to assure to each independence in the sphere of its own functions. It is the prerogative of the judiciary to determine what the law is, and the responsibility of the legislature to declare what the law shall be. *McLeod v. Burroughs*, 9 Ga. 213, 216.

From the foregoing discussion it becomes apparent that the pronouncements of *Ga. State Board &c. v. Friedman's Jewelers*, 183 Ga. 669, supra, written in the year 1936, that optometry was not a learned profession, was not, as the defendants insist, a legal barrier to the legislative statement to the contrary in the year 1956. Moreover, the *Friedman* case is not opposed in principle to the Act of 1956. The opinion in that case merely construed the Act of 1916, and its conclusion as to the classification of optometry is based upon three considerations: (1) that the Act of 1916 defined optometry in terms that clearly indicated it was a mere manual pursuit; (2) that the same Act required only two years of high school as the academic education for a license to practice optometry; (3) that neither the Act of 1916 nor any other law of the State had by the year 1936 declared optometry to be a learned profession. So it is apparent that optometry as defined by the Act of 1916 discussed in the *Friedman* case and optometry as reflected by the provisions of the Act of 1956 were quite different in every aspect that tended to reflect the profession as manual or learned.

■ The profession of optometry is, according to the definition of the science contained in the Act of 1956, the leading legal encyclopedias and the weight of authority in other jurisdictions, identified with and vitally concerns the welfare of the people. "By its very nature, the practice of optometry is subject to regulation for the protection of the public against ignorance and incapacity and deception and fraud, equally with the practice of ophthalmology and the other 'learned professions,' a category originally confined to theology, law and medicine, but long since broadened in keeping with the diffusion of scientific learning

and the need of specialized knowledge in the functioning of our ever-expanding and complex society." Abelson's v. N. J. State Bd. of Optometrists, 5 NJ 412, 419, supra. In State v. Standard Optical Co., 182 Ore. 452 (188 P2d 309), is the holding: "It would seem that the public has as much need to be protected from quacks and charlatans in optometry as in dentistry or any other sub-division of medicine. . . One who consults an optometrist for ocular examination is entitled to the same undivided loyalty that he should receive from a physician. The fact that the optometrist is the employee of an optical concern whose main interest is the sale of optical goods tends to be a distracting influence which may adversely affect his loyalty to the interests of his patient."

In *Holcomb v. Johnston*, 213 Ga. 249, 252, supra, this court held: "There can be no doubt that the practice of dentistry is affected with the public interest, and to insure protection of the public health and welfare the profession of dentistry is a logical subject for regulation by the legislature." As supporting authority the *Holcomb* case cites 11 Am. Jur. 1052, § 289, which contains the text: "In order to safeguard the public, the state may therefore make proper regulations concerning the practice of medicine and surgery, dentistry, optometry, chiropody, chiropractic, and nursing; it may also regulate the practice of law." See also State v. Nat. Optical Stores, 189 Tenn. 433 (225 SW2d 263); McMurdo v. Getter, 298 Mass. 363 (10 NE2d 139).

■ Having determined that optometry is within the contemplation of the law a learned profession affected with the public interest, hence subject to the police power of the State, the rules regarding the modus operandi for exercising control of the profession are aptly stated in *Bohannon v. Duncan*, 185 Ga. 840, 842 (3) (196 SE 897): "The legislative department of the State, wherein the Constitution has lodged all legislative authority, will not be permitted to relieve itself by the delegation thereof. It can not confer on any person or body the power to determine what the law shall be. But this constitutional inhibition does not prevent the grant of legislative authority to some administrative board or other tribunal to adopt rules, bylaws, or ordinances for its government, or to carry out a particular purpose. Thus,

while it is necessary that a law, when it comes from the law-making power shall be complete, still there are many matters as to methods or details which the legislature may refer to some designated ministerial officer or board. Cooley's Const. Lim. 114. The constitutional prohibition, therefore, does not deny to the law making body 'the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply.' Schechter v. U. S., 295 US 495 (55 SC 837, 79 LE 1570, 97 ALR 947, 957); Panama Ref. Co. v. Ryan, 293 US 388 (79 L Ed 223); *Aultman v. Hodge,* 150 Ga. 370, 372 (104 SE 1); *Maner v. Dykes,* 55 Ga. App. 436, 438 (190 SE 189), and cit." See also *Cooper v. Rollins,* 152 Ga. 588 (2) (110 SE 726, 20 ALR 1105); *Lamons v. Yarbrough,* 206 Ga. 50, 57 (55 SE2d 551); *Gartrell v. McGahee,* 216 Ga. 125, 128 (1) (114 SE2d 871).

The plaintiff board was set up by the legislature and empowered to adopt rules and regulations for control of the profession in conformity with the cases above cited.

■ The rules and regulations adopted by the plaintiff board effective on April 1, 1963, were reasonable, salutary and well designed to achieve the orderly, ethical and proper control of the profession of optometry. They meet the requirements of *Glustrom v. State,* 206 Ga. 734, 736 (58 SE2d 534), *Hutchins v. Williams,* 212 Ga. 754 (95 SE2d 674), and *Gartrell v. McGahee,* 216 Ga. 125, supra, that rules promulgated by administrative boards be within the framework of the Act creating them and designed to accomplish the purpose of the Act. The rules inhibiting employment of a licensed optometrist by an unlicensed person or corporation is in keeping with the public policy of the State. *Boykin v. Hopkins,* 174 Ga. 511 (162 SE 796).

Similar rules are in many jurisdictions recognized as wholesome. In State v. Nat. Optical Stores, 189 Tenn. 433, supra, citing State v. Retail Creditmen's Assn., 163 Tenn. 450, 466 (43 SW2d 918), it is stated: "The rule is uniform that a corporation cannot practice one of the learned professions. 19 CJS, Corpo-

rations, 956, and obviously this implies that the corporation cannot employ a licensed practitioner, since a corporation acts only through agents . . . to practice for it."

When prescribed by proper action of the board the rules and regulations did not infringe upon any legal right of the defendant, and had all the force and effect of statutes of the State. Union Dry Goods Co. v. Georgia P. S. Corp., 248 US 372, 375 (39 SC 117, 63 LE 309); *Knight v. Wingate*, 205 Ga. 133, 137 (52 SE2d 604); *Atkins v. Manning*, 206 Ga. 219, 221 (56 SE2d 260); *Sheffield v. State School Bldg. Authority*, 208 Ga. 575, 582 (3) (68 SE2d 590). To disobey them was to violate the law.

6. The stipulation of fact which served as evidence in the case showed a most flagrant violation of the rules by the defendants in that Pearle and Henderson were conjunctively practicing optometry as an integral part of the corporation's optical business. Pearle advertised that a licensed optometrist was on duty at all times in its optical establishment, guaranteed proficient professional services in connection with the sale of its optical merchandise, and referred to those who patronized its establishment not as customers or patrons but as "our patients." Pearle collected the entire proceeds realized from the operation of the business and merely paid Henderson a salary. The observation of the *Friedman* case, supra, that where a corporation merely employed an optometrist to examine eyes, but made no charge for the service, the corporation was not practicing the profession, is not in conflict with what is held here.

*Judgment affirmed. All the Justices concur.*