22429. LEE OPTICAL OF GEORGIA, INC. v. STATE BOARD OF EXAMINERS IN OPTOMETRY et al.
22430. GOLD v. STATE BOARD OF EXAMINERS IN OPTOMETRY et al.

CANDLER, Justice. The Georgia State Board of Examiners in Optometry filed a petition in the Superior Court of Floyd

County for injunctive relief against Lee Optical of Georgia, Inc., a Georgia corporation, and D. L. Gold, a licensed optometrist. Its petition as amended alleges that the defendant corporation conducts an optical business in the City of Rome, Georgia; that it employs and pays the defendant Gold to render for it optometric services to its customers at its place of business; that the defendant Gold uses equipment which the defendant corporation furnishes him; that he has been and is rendering optometric services for the corporate defendant; and that the defendant Gold receives no fees from and has no relationship with the corporate defendant's customers except in virtue of his employment. Attached to the petition as an exhibit is a copy of the rules and regulations adopted by the petitioner which became effective on April 1, 1963. Besides for process, rule nisi and service, the prayers are that the defendants be temporarily and permanently enjoined from engaging in the practice of optometry contrary to the law regulating the practice of that profession and the rules and regulations adopted pursuant to such law and for general relief.

The defendant corporation answered the petition and at an interlocutory hearing the parties stipulated that the defendant Gold, a duly licensed optometrist who is authorized to practice optometry in the State of Georgia, is employed and paid by the corporate defendant to examine eyes of persons for it but no charge is made to such persons for the service he renders them. It was also stipulated that the copy of the rules and regulations of the board of examiners in optometry which was attached to the amended petition is a correct copy thereof and that such rules and regulations were in force and effect at all times mentioned in the petition. No other evidence was introduced on the interlocutory hearing and the court temporarily restrained and enjoined the defendant from committing any of the acts complained of in the petition. The exception is to that judgment. *Held:*

The only questions the writs of error present for decision are whether or not the corporate defendant is unlawfully practicing the profession of optometry by employing and paying the defendant Gold, a licensed optometrist, to examine eyes of persons for it when no charge is made to such persons for the service he renders them, and whether or not the defendant Gold is violating the rules and regulations which the

board of examiners in optometry adopted pursuant to an Act which was passed in 1963 (Ga. L. 1963, p. 214) by accepting employment from the corporate defendant to render such optometric services for it.

These two questions are fully answered in the affirmative by the unanimous decision which this court rendered on October 10, 1963, in *Pearle Optical of Monroeville, Inc. v. State Board of Examiners in Optometry,* 219 Ga. 364 (133 SE2d 374); and since the opinion in that case so exhaustively deals with and settles the questions presently before us for review adversely to the contentions of the plaintiffs in error, no further discussion of them is here deemed necessary, and the motion to overrule that case, after being fully considered, is denied. A ruling different from the one here made is not required by the decision this court rendered on December 4, 1936, in *Georgia State Board of Examiners in Optometry v. Friedman's Jewelers,* 183 Ga. 669 (189 SE 238); and this is true for the reason that the law respecting optometry has been materially changed since that case was decided, and optometry is now by statute expressly declared to be a learned profession and not merely a mechanical art as it was classified and deemed to be when *Friedman's* case was decided. See Ga. L. 1956, p. 94, as amended by Ga. L. 1963, p. 214.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*

ARGUED APRIL 13, 1964—DECIDED JULY 13, 1964—REHEARING DENIED JULY 27 AND AUGUST 11, 1964.

*Matthews, Maddox, Walton & Smith, John W. Maddox, William G. Grant, John W. Dorn, Wright, Walther & Morgan, Clinton J. Morgan,* for plaintiffs in error.

*Eugene Cook, Attorney General, G. Hughel Harrison, Assistant Attorney General,* contra.

*James L. Moore, Jr., Francis Shackelford, Will Ed Smith, Henry P. Eve, Ed G. Barham, H. H. Perry, Jr., Paul M. Conaway, Trammell Shi,* for parties at interest not parties to record.

HEAD, Presiding Justice, concurring. "The practice of fitting glasses to the human eye, and treating ocular inflammation, without the use of drugs or surgery, is subject to supervision and regulation under the state police power." McNaughton v.

Johnson, 242 U.S. 344 (37 SC 178, 61 LE 352). It is the general rule that in the absence of express statutory authority a corporation or individual not licensed to practice optometry can not practice optometry through a licensed employee. 102 ALR 343; 13 Am. Jur. 838, Corporations, § 837; 19 CJS 401, Corporations, § 956.

Exceptions to the general rule exist where the statute treats optometry merely as a mechanical art. Dvorine v. Castelberg Jewelry Corp., 170 Md. 661 (185 A 562). In the Dvorine case the Maryland court stated that the practice of optometry "is essentially a mechanical art," and this language is quoted in the decision of this court in *Georgia State Board of Examiners in Optometry v. Friedman's Jewelers, Inc.*, 183 Ga. 669, 674 (189 SE 238). The statute of Maryland (Ann. Code of Maryland of 1924, art. 43, § 318) at the time of the Dvorine decision provided in part for an examination in "the use of all instruments used in making examination of the eye, and such other subjects as said board may deem advisable." I do not understand this court in *Friedman's* case to hold that (under § 84-1105 of the Code of 1933 pertaining to examinations of optometrists, effective at the time of the decision) the practice of optometry was a "mechanical art." The court quoted the statute defining optometry (Code of 1933, § 84-1101) as follows: " 'Optometry' or the practice thereof is the employment of any means, other than the use of drugs, for the measurement of the powers of vision and the adaptation of lenses for the aid of same." The court then stated: "we conclude that the practice of optometry is not, outside of statutory enactments, recognized as comparable to the 'learned professions,' and that the employment of a qualified optometrist by a corporation is not against public policy." Since the court did not in *Friedman's* case review the standards required of optometrists on examination as then existing (Code of 1933, § 84-1105), it appears that the court's decision and judgment (in part at least) may have rested on the Dvorine case by the Maryland court. The Maryland decision was based on requirements of their statutes substantially different from the Georgia law. However the decision in *Friedman's* case, decided in 1936, was arrived at, it was binding au-

thority for the proposition that optometry under the Georgia law and the standards of *Code* § 84-1105 (and until the Act of 1953, Ga. L. 1953, pp. 114-117) was not a learned profession.

Under our system of government it is axiomatic that the judicial branch alone has the power to construe and interpret the Constitution and laws of this State. *Calhoun v. McLendon*, 42 Ga. 405; *Northside Manor, Inc. v. Vann*, 219 Ga. 298 (133 SE2d 32). A declaration by the General Assembly purporting to state the scope of statutory enactments is valid only in so far as the statutes support the declaration made.

Under the amendatory Act of 1953 (Ga. L. 1953, pp. 114-117) the standards of training and knowledge required of an applicant for examination to be licensed as an optometrist were substantially extended as to time of study and the number of subjects to be studied. After providing that a person must be 21 years of age, of good moral character, and possessed of a high school education of not less than 16 Carnegie units, or the equivalent, the statute then provides that the applicant shall have "completed not less than two years of pre-optometry college work in a college of arts and sciences approved by the board, or the equivalent thereof to be determined by the board, and hold a certificate of graduation from an accredited college or university teaching optometry acceptable to the board requiring a course of study therein of at least three school years. The said board shall examine all applicants shown to have the necessary qualifications, as above set forth, in the following subjects: anatomy—gross, microscopic, neural, cranial and ocular; physiology—general, human and physiological optics; psychology—general, applied, abnormal and visual; pathology—general, cranial and ocular; chemistry—general and organic; mathematics—physical and geometrical optics; mechanical optics; pharmacology; bacteriology; optometry — theoretical, practical and clinical; and any other subject or subjects which may be germane to the practice of optometry, including normal and abnormal refractive, accommodative and muscular conditions of the eye as applied by recognized methods of subjective and objective optometry when determining the need for visual correction, visual training and any other physical or physio-

logical means of restoring the visual process to normal. When the applicant shall attain an average standing of 75 per cent, on all subjects submitted he shall be deemed to have passed satisfactorily, and shall be given a certificate of registration, . . ." Knowledge of the subjects required by the 1953 amendment (*Code Ann.* § 84-1105) sufficient to make a passing grade of 75 percent demonstrates conclusively that an optometrist practicing his profession in Georgia under a license issued by this State is engaged in practicing a learned profession. The declaration by the General Assembly in the amendatory Act of 1956 (Ga. L. 1956, pp. 94-95; *Code Ann. Supp.* § 84-1101) that optometry is a "learned profession" is supported factually by the amendatory Act of 1953 (Ga. L. 1953, pp. 114-117; *Code Ann.* § 84-1105).

The decision of this court in *Pearle Optical of Monroeville, Inc. v. State Board of Examiners in Optometry*, 219 Ga. 364 (133 SE2d 374), pursuant to the amendatory Acts of 1953 (Ga. L. 1953, pp. 114-117) and 1956 (Ga. L. 1956, pp. 94-95) established the rule that (under the amendatory Acts) the practice of optometry in this State is now the practice of a "learned profession."

The defendant Gold's employment was in violation of valid rules of the State Board of Examiners in Optometry, and the trial judge properly enjoined such employment.

I am authorized to say that Mr. Justice Mobley, Mr. Justice Quillian and Mr. Justice Grice join in this concurring opinion.

DUCKWORTH, Chief Justice, dissenting. Believing that the law has been badly treated by this court's contradictory decisions, and by the legislative attempt to usurp the exclusive jurisdiction of the judiciary, I wish to set forth here what I believe to be the controlling law in this case, and try to demonstrate errors of this court and of the legislature.

Since the facts here are identical with the facts in *State Board of Examiners in Optometry v. Friedman's Jewelers*, 183 Ga. 669 (189 SE 238), we are bound by that decision, and our decision here is sound law only if it follows that full bench decision. The two decisive rulings made in the *Friedman* case were (1) optometry was not a "learned profession," and (2)

a corporation by employing a licensed optometrist, and selling glasses only on his prescription, was not practicing optometry, and that its acts in such circumstances will not endanger public health so as to thwart the purpose of the statute. The first ruling was based upon sound judicial reasoning. It is there said (p. 672): "It is most earnestly contended by the board, however, that the practice of optometry is a 'learned profession,' as is the practice of law and medicine. The distinction between the so-called 'learned professions' and other professions, trades or callings, has been continuously recognized *by the courts.*" (Italics mine). The opinion then sets forth Webster's International Dictionary definition of the word "profession," concluding with a note therein as follows: "The three professions, or learned professions, are especially, theology, law, and medicine." Then this court said: "This distinction between the 'three professions' and others is not derivable from *statutory enactments,* but is one recognized and established through time because of the inherent difference between these professions and those of ordinary vocations and callings. . . Optometry itself is a profession of ancient standing (Martin v. Baldy, 249 Pa. 253, 94 A 1091); but so far as we are aware, it has never been recognized to be a 'learned profession' . . ." (Italics mine). Having thus met with a judicial determination that optometry was not a learned profession, and that a determination of what is a learned profession is not derived from statutory enactments, resort was made by the board to the legislature, and the legislature obliged. See Ga. L. 1956, p. 94. In Section 1 thereof it is said: "Optometry is defined as the art and science of visual care and is hereby declared to be a *learned profession.*" (Italics mine). In *McCutcheon v. MacNeill,* 197 Ga. 72 (28 SE2d 469), this court held that Mrs. Evelyn McCutcheon was not an employee of Fulton County on June 1, 1943, under terms of the Civil Service Act of 1943. By an Act approved February 8, 1945 (Ga. L. 1945, p. 556), the legislature purported to amend the 1943 Act as follows: "It is hereby declared that as of June 1, 1943, Mrs. Evelyn W. McCutcheon was an employee of Fulton County." In *McCutcheon v. Smith,* 199 Ga. 685 (35 SE2d 144), this court held the amendment void as an invasion of judicial

authority. Even that flat judicial rebuke did not restrain the legislature from attempting to usurp judicial powers, and this court with equal firmness ruled such attempts void in the following cases: *Parks v. State*, 212 Ga. 433, 437 (93 SE2d 663); *Martin v. Baldwin*, 215 Ga. 293, 299 (110 SE2d 344); *United Hospitals Service Assn. v. Fulton County*, 216 Ga. 30, 33 (114 SE2d 524); *Northside. Manor, Inc. v. Vann*, 219 Ga. 298 (133 SE2d 32).

We completely overlooked this sound principle of law and the foregoing binding decisions when in *Pearle Optical v. State Board*, 219 Ga. 364 (133 SE2d 374), we said that that portion of the 1956 Act, supra, which declared optometry to be a "learned profession" is valid. What we there said is itself invalid because it is in irreconcilable conflict with the numerous older decisions holding to the contrary. As above demonstrated whether or not optometry is a learned profession is a judicial rather than a legislative question. It has been judicially decided in the negative, and the legislative attempt to overrule that decision by this court is utterly void. Likewise the full bench decision in the *Friedman* case, supra, involving facts identical with those in the present case, demands a like ruling here that the corporation is not practicing optometry. The *Pearle Optical* case involved materially different facts. There the optometrist gave prescriptions which were filled elsewhere and a fee was charged for them, and there were other material facts showing the corporation to be engaged in the practice of optometry. The judgment there was sound. But the approval of the Act of 1956 was contrary to law and is unsound and is not binding. It was stipulated in that case that: "There has been no substantial change in the actual procedure utilized by licensed optometrists in the practice of optometry in Georgia other than the normal scientific developments and improvements in procedures, methods and equipment since February 13, 1956, nor since December 15, 1936." These dates are respectively when the *Friedman* case was decided and when the 1956 Act declaring optometry to be a learned profession was approved. Thus is shown that optometry has been the same throughout, and hence the ruling that it is not a learned profession applied in 1956 and in 1964.

In view of the numerous briefs filed on behalf of lawyers, doctors and dentists, I would say that I would judicially hold all those professions to be "learned," and my position here holds no threat to them. For all the foregoing reasons, I feel that I am bound by the *Friedman* case, supra; and since it is not overruled, the judgment here should be the same as the judgment there rendered.