38037. SHERRER et al. v. HALE et al.

HILL, Presiding Justice.

This is an appeal from the trial court's grant of an interlocutory injunction, ordering the reversion of Pathology Associates of Marietta, P. C., into a traditional business corporation and the reinstatement of Mr. Henry Hale's shareholder interest in that corporation.

Pathology Associates of Marietta, P. C. [hereinafter PAM, P. C.], was incorporated as a professional corporation under Code Ch. 84-54 in 1972 by Dr. Webster A. Sherrer, a licensed physician and specialist in pathology, who acquired all 100 shares of the corporation's stock. The corporation operated a licensed clinical laboratory under the supervision of Dr. Sherrer which performed various tests and microscopic examinations on human tissue and specimens submitted by area physicians.[1] The results of the tests or examinations, and sometimes diagnoses and recommendations, were then transmitted by Dr. Sherrer to the submitting physician.

Due in part to financial difficulties experienced by the company, in May of 1976 Dr. Sherrer amended the articles of incorporation and converted the business from a professional corporation into a traditional business corporation, Pathology Associates of Marietta, Inc. [PAM, Inc.], in order to permit his business advisor, Mr. Henry Hale, a nonphysician, to become a shareholder.[2] Mr. Hale purchased 50 shares of stock from Dr. Sherrer for $3332.00 (one-half of the corporation's book value) and received a bill of sale for the stock. Neither Dr. Sherrer nor Mr. Hale received stock certificates and

---

[1] The laboratory was licensed by the Georgia Department of Human Resources under the Clinical Laboratory Act, Code Ch. 84-55, and by the Center for Disease Control under the Clinical Laboratories Improvement Act of 1976, 42 USC § 263a.

[2] A nonphysician cannot be a shareholder in a medical professional corporation, except under limited circumstances prescribed by law. Code Ann. § 84-5405.

neither interest was listed in the corporation's stock records. A shareholder's agreement was executed which empowered Dr. Sherrer to unilaterally repurchase Mr. Hale's stock at any time within four years by paying Mr. Hale one-half of the corporation's book value. Dr. Sherrer was elected president of the corporation and Mr. Hale was elected a director and the corporation's secretary.

Contemporaneous with the conversion of the professional corporation into a business corporation, Dr. Sherrer incorporated a professional corporation in Dalton, Georgia, for tax and pension advantages. Dr. Sherrer then moved to Dalton, executed an exclusive employment agreement with his Dalton corporation and accepted a position with a local hospital. All compensation earned by Dr. Sherrer from the hospital and PAM, Inc., was paid to his Dalton corporation.

In Dr. Sherrer's absence, Mr. Hale assumed the marketing and management responsibilities for PAM, Inc., and Dr. Louis Rodriguez, M. D., was retained to replace Dr. Sherrer in the Marietta laboratory. Dr. Rodriguez continued the practice of sometimes issuing to requesting physicians diagnoses and recommendations based on the laboratory findings. It is unclear whether Dr. Rodriguez was performing as an employee of the corporation or an independent contractor, although the evidence does show that PAM, Inc., had medical malpractice insurance, diagnoses were issued on corporate stationary, and the corporation billed and collected the fees for Dr. Rodriguez's services.

In 1979, Dr. Sherrer left Dalton, returned to Marietta and replaced Dr. Rodriguez at PAM, Inc., continuing to be paid only through his Dalton professional corporation. Although discussions were held between Dr. Sherrer and Mr. Hale concerning the repurchase of Mr. Hale's stock by Dr. Sherrer, Dr. Sherrer's unilateral repurchase rights contained in the shareholder's agreement expired without being exercised.

In January, 1981, Dr. Sherrer retained counsel to assist him in negotiating the repurchase of Mr. Hale's stock. His attorney informed him that, by issuing diagnoses, PAM, Inc., was engaged in the practice of medicine and that a corporation could practice medicine only in the form of a professional corporation. Thus, according to the attorney, the conversion of the company in 1976 into a business corporation was void and it remained a professional corporation. Furthermore, advised the attorney, shares in a professional corporation issued or transferred to a person not licensed in the profession being practiced are void. Therefore, according to counsel, Mr. Hale was not legally a shareholder in the corporation.

Acting on this advice, Dr. Sherrer called meetings of the shareholders and directors of PAM, Inc., on February 4, 1981, without giving Mr. Hale notice. At those meetings, Dr. Sherrer declared Mr. Hale's shareholder's interest void and removed him as secretary of the corporation. On February 5, Dr. Sherrer filed an amendment to the articles of incorporation converting the company back into a professional corporation. Mr. Hale received notice of these actions in a letter from Dr. Sherrer's attorney dated February 6, 1981. Mr. Hale has received no refund or other compensation for his interest in the corporation.

Mr. Hale then filed suit, individually and as a shareholder's derivative action, against Dr. Sherrer and PAM, P. C., seeking, inter alia, an injunction prohibiting interference with his status as a shareholder, director and officer of the corporation. After a hearing, the trial court ruled that equitable relief was necessary to prevent irreparable harm to Mr. Hale and issued an interlocutory injunction declaring Dr. Sherrer's actions at the corporate meetings of February 4, 1981, void and ordering the reversion of PAM, P. C., into a business corporation. Dr. Sherrer appeals the granting of the temporary injunction.

Dr. Sherrer contends that, under the statutory definition of "clinical laboratory," Code Ann. § 84-5502 (d),[3] there are two different types of clinical laboratories in operation. Some, according to Dr. Sherrer, are "assay" laboratories which merely conduct tests and examinations and report the results back to the requesting physician. Others, "diagnostic" laboratories (such as the Marietta laboratory here in issue), make diagnoses and recommendations which are then given to the requesting physician. Dr. Sherrer argues that although "assay" laboratories (which do not engage in the practice of medicine) may be owned by nonphysicians and may be operated as business corporations, "diagnostic" laboratories (which by statutory definition, Code Ann. § 84-901,[4] do engage in the practice of medicine) may only be owned by physicians and may only be operated as professional corporations. (Quare: Does a laboratory which makes diagnoses and recommendations to requesting

---

[3] Code Ann. § 84-5502 (d) provides: " 'Clinical laboratory' means a facility for the biological, microbiological, serological, chemical, immunohematological, hematological, biophysical, cytological, pathological, or other examination of materials derived from the human body, *for the diagnosis of, recommendation of treatment of, or for the purposes of providing information* for the diagnosis, prevention, or treatment of any disease or impairment of, or the assessment of the health of, man. . . ." (Emphasis supplied.)

[4] Code Ann. § 84-901 provides: "The terms 'practice of medicine,' 'to practice

physicians hold itself out "to the public" within the meaning of Code Ann. § 84-901?) Mr. Hale argues, inter alia, that because at least thirteen clinical laboratories with nonphysician shareholders are licensed by the Department of Human Resources, nonphysician ownership of clinical laboratories engaged in the practice of medicine is authorized by the Clinical Laboratory Act, Code Ch. 84-55. We find it both unnecessary and inappropriate to rule on this issue in this case.

Dr. Sherrer also argues that because Mr. Hale has an adequate remedy at law (money damages), injunctive (equitable) relief was not authorized. As is often the case, in order to determine whether equitable relief is authorized, we must first ascertain what rights, if any, the plaintiff has which warrant protection. Thus, we defer this question until after consideration of the merits.

1. Dr. Sherrer urges that since their inception PAM, P. C., and PAM, Inc., have been engaged in the practice of medicine, and because, he contends, only a medical professional corporation can be involved in the practice of medicine, the 1976 conversion of the company into a business corporation was void. Assuming that by issuing diagnoses and recommendations of treatment to requesting physicians, Drs. Sherrer and Rodriguez were engaged in "the practice of medicine," Code Ann. § 84-901, and assuming that the corporation therefore was engaged in the practice of medicine, see *Pearle Optical v. State Bd. of Examiners,* 219 Ga. 364, 375-76 (133 SE2d 374) (1963), we do not agree that the 1976 conversion of the company from a professional corporation into a business corporation was void.

Although it is true that a business corporation cannot lawfully practice one of the so-called "learned professions," *Pearle Optical v. State Bd. of Examiners,* supra, 219 Ga. at 375, it does not follow that a corporation violating this prohibition is "void." Dr. Sherrer argues that the practice of medicine by a business corporation is against the public policy of the state and therefore the 1976 conversion to PAM, Inc., must also be void as being against public policy. If this were so, any corporation which entered into a usurious loan, a gambling contract, a limitation of liability, or an employment contract containing an overbroad restrictive covenant, which are against

medicine,' 'practicing medicine,' and 'practice medicine,' as used in this Chapter, are hereby defined to mean holding one's self out to the public as being engaged in the *diagnosis* or treatment of disease, defects or injuries of human beings, or the suggestion, *recommendation* or prescribing of any form of *treatment* for the intended palliation, relief or cure of any physical, mental or functional ailment or defect of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever. . . ." (Emphasis supplied.)

public policy, would become void. It is not against the public policy of this state for a professional corporation to convert to a business corporation; it is against the public policy for a business corporation to perform acts which constitute the practice of medicine. Thus, although the acts of a corporation may be declared void as illegal and against public policy, and in some instances such acts may be enjoined, *Pearle Optical v. State Bd. of Examiners,* supra, the corporation itself does not cease to be a corporation. If such a corporation were void, as Dr. Sherrer contends, it could not be punished for or prohibited from its improper conduct.

The trial court found that PAM, P. C., was effectively converted into a regular business corporation in 1976, and that Mr. Hale was a 50% shareholder and a director of the corporation. We therefore agree with the trial court that Mr. Hale was entitled to notice prior to any shareholder's and director's meetings, and any amendment to the corporation's articles of incorporation, Code Ann. §§ 22-604 (a), 22-709 (b), 22-902 (b) (2), just as Dr. Sherrer would be as to meetings called by Mr. Hale.

2. Directing our attention now to the question of whether the injunction was improperly granted because Mr. Hale had an adequate remedy at law (money damages), the trial court found, inter alia, that Dr. Sherrer had waived this defense in the shareholder's agreement.[5] Dr. Sherrer argues that the waiver provision is ineffective because the question of whether an adequate remedy at law exists determines if the trial court has equity jurisdiction and, under Code Ann. § 24-112, subject-matter jurisdiction cannot be conferred on the trial court by agreement of the parties.

Although the agreement of the parties is entitled to consideration, we agree that the parties cannot by waiver or consent confer equity jurisdiction on a court where it is otherwise without jurisdiction. E.g., *Gray v. Gray,* 229 Ga. 460, 461 (2) (192 SE2d 334) (1972); *Sweatman v. Roberts,* 213 Ga. 112 (97 SE2d 320) (1957); Code Ann. § 24-112. We also agree that equitable relief is improper if the complainant has a remedy at law which is "adequate," i.e., "as

---

[5] The shareholder's agreement provides: "The parties hereby declare that it is impossible to measure in money the damages that will accrue to a party to this Agreement . . . by reason of a failure to perform any of the obligations under this Agreement. Therefore, if a party to this Agreement . . . shall institute any action or proceeding to enforce the provisions of this Agreement, any person (including the Company) against whom such action or proceeding is brought hereby waives the claim or defense therein that such party . . . has or have an adequate remedy at law, and such person shall not urge in any such action or proceeding the claim or defense that such remedy at law exists."

practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Middlebrooks v. Lonas,* 246 Ga. 720, 721 (272 SE2d 687) (1980). See also Code Ann. § 37-120. However, in this case Mr. Hale is without an adequate remedy at law because he is currently being deprived of his investment and his elected positions as director and secretary of a corporation in which he owns a one-half interest. The loss of these positions and their influence over the future direction of the corporation in which he has an interest is not compensable in damages. See *Johnson v. Tribune-Herald Co.,* 155 Ga. 204 (3) (116 SE 810) (1922). The direction to be taken by PAM, Inc., is important to Mr. Hale because Dr. Sherrer argues that PAM, Inc., could be operated as an "assay" laboratory without violating the Clinical Laboratories Act, supra, and that Dr. Sherrer could provide separate diagnostic reports to be billed and paid separately. However PAM, Inc., is to be operated, Mr. Hale has a shareholder's interest in its future equal to that of Dr. Sherrer. The trial court did not err in granting equitable relief.

3. Whether or not warranted at the final hearing, the trial court did not err in reserving until that hearing the question of attorney fees. Code Ann. §§ 20-1404, 22-615 (d). Although Mr. Hale owned 50% of the stock, and as Dr. Sherrer contends, a shareholder's derivative action would most often be brought by a minority shareholder, Mr. Hale was not a majority stockholder and he was treated as if he were a nonexistent stockholder.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1982 —
REHEARING DENIED JANUARY 26, 1982.

*Cohen, Mackin, Pollock, Cooper & Comolli, John M. Comolli, Dennis M. Mackin,* for appellants.
*Archer D. Smith III, John M. Leiter,* for appellees.

