A99A0882, A99A0991. HEALTH HORIZONS, INC. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and vice versa.
(521 SE2d 383)

ELDRIDGE, Judge.

On August 8, 1997, Health Horizons, Inc. ("Health Horizons") filed a complaint for fraud against State Farm Mutual Automobile Insurance Company ("State Farm") in the DeKalb Superior Court. In paragraph 3, Health Horizons mistakenly alleged that it "is a Georgia corporation." In its answer and defensive pleadings, State Farm did not raise any issue of the standing of Health Horizons to sue in Georgia, although it was a foreign corporation that transacted business in Georgia without a certificate of authority. After discovery and various discovery motions, it was revealed that Health Horizons did not have a certificate of authority; promptly, on May 26, 1998, a certificate of authority was obtained, and on June 10, 1998, the complaint was amended to reflect that Health Horizons was a foreign corporation transacting business in Georgia under a certificate of authority. On June 15, 1998, State Farm amended its answer to raise for the first time that Health Horizons lacked the capacity to sue

because it was a foreign corporation transacting business in Georgia since January 1, 1995, had first obtained a certificate of authority on May 26, 1998, but had filed this suit on August 8, 1997. Subsequently, on July 20, 1998, State Farm filed its motion to dismiss for failure to have a certificate of authority at the time of filing the complaint.

Health Horizons is engaged in the practice of corporate medicine which State Farm contends is the unauthorized practice of corporate medicine. Health Horizons is a foreign for-profit business corporation that "furnishes health care services" for which it seeks to collect from State Farm. Health Horizons contends that it is not engaged in the practice of medicine but receives payment of fees arising from the practice of medicine by Ken G. Knott, M.D. State Farm contends that OCGA §§ 43-34-26 (a) and 43-34-43 and the rules of the Composite State Board of Medical Examiners prohibit the practice of medicine by a for-profit business corporation. On July 20, 1998, State Farm's motion on such grounds was denied.

Hearing on the motion was held on November 2, 1998, and the trial court granted the motion and dismissed without prejudice. Health Horizons filed its notice of appeal. On December 3, 1998, State Farm filed its notice of cross-appeal.

*Case No. A99A0882*

The sole enumeration of error is that the trial court erred in granting the motion to dismiss for failure to have a certificate of authority at the time the complaint was filed. We agree.

OCGA § 14-2-1502 (a) provides: "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority."

OCGA § 14-2-1501 (a) provides: "[a] foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State." "[T]he purpose of [OCGA § 14-2-1501 (a)] is to require registration of foreign corporations which intend to conduct business in Georgia on a continuous basis, not as a temporary matter." *Reisman v. Martori, Meyer, Hendricks &c.*, 155 Ga. App. 551, 552 (1) (271 SE2d 685) (1980). A foreign corporation that obtains a certificate of authority is subject to service under OCGA § 14-2-1510. See *Spiegel, Inc. v. Odum*, 153 Ga. App. 380, 381-382 (265 SE2d 297) (1980). Registration of a foreign corporation makes it easier for the State Revenue Commissioner to collect taxes from it. OCGA §§ 48-5-511; 48-5-513; 48-7-21 (a); 48-13-75; *Northwestern States Portland Cement Co. v. Minnesota*, 358 U. S. 450 (79 SC 357, 3 LE2d 421) (1959); *Roberts v. Lipson*, 231 Ga. 142 (200 SE2d 722) (1973);

*Owens-Illinois Glass Co. v. Oxford*, 216 Ga. 316, 322-324 (116 SE2d 293) (1960); *Montag Bros., Inc. v. State Revenue Comm.*, 50 Ga. App. 660, 663-665 (1) (179 SE 563) (1935), aff'd, 182 Ga. 568 (186 SE 558) (1936). These are the underlying reasons for such statutory scheme.

Under a similar statutory scheme, the Georgia Nonresident Contractors Act ("NCA"), the nonresident contractor must register with the State Revenue Commissioner and post a bond for tax liabilities incurred for income earned in the state from the contract and any other taxes due. See OCGA § 48-13-31. A certificate of authority from the Secretary of State does not exempt a nonresident contractor from registration with the State Revenue Commissioner. See *George C. Carroll Constr. Co. v. Langford Constr. Co.*, 182 Ga. App. 258, 259-261 (355 SE2d 756) (1987), rev'd on other grounds, *Clover Cable of Ohio v. Heywood*, 260 Ga. 341, 344 (3) (392 SE2d 855) (1990). OCGA § 48-13-37, like OCGA § 14-2-1502 (a), provides that: "[n]o contractor who fails to register with the commissioner as required by this article or who fails to comply with any provision of this article shall be entitled to maintain an action to recover payment for performance on the contract in the courts of this state." "The purpose of the NCA is revenue collection enhancement or, in other words, protection of the State and its political subdivisions from nonresident contractors who leave the State without paying their taxes and unemployment contributions. [Cit.]" *Dept. of Transp. v. Moseman Constr. Co.*, 260 Ga. 369 (393 SE2d 258) (1990). "The statutory scheme contemplates the possibility of cure by allowing late registration and bonding. Additionally, OCGA § 1-3-1 (c) provides that substantial compliance with any statutory requirement shall be deemed and held sufficient." (Punctuation omitted.) Id. at 370. In *Dept. of Transp. v. Moseman Constr. Co.*, the contractor transacted business in Georgia without first registering and posting bond with the Revenue Commissioner; when the contractor sued DOT, DOT moved to dismiss under OCGA § 48-13-31. The contractor's performance bond provided for payment of all taxes and the contractor ultimately complied with the NCA prior to the contract completion. The Supreme Court affirmed the trial court's denial of the motion to dismiss, holding:

> [t]he purpose of the NCA is fulfilled where the nonresident contractor has registered its contract with the Revenue Commissioner and has posted the necessary bond to cover its possible liability to the State. . . . Because Moseman has now met the requirements of the NCA and has its liability to the State covered by the necessary bond, we hold that Moseman has substantially complied with the NCA, and, thus, the trial court did not err in denying the DOT's motion to dismiss.

Id. at 370-371.

Thus, under OCGA § 1-3-1 (c), and construing OCGA §§ 14-2-1502 and 48-13-37 in pari materia as a similar body of law intended by the General Assembly by statutes to cure similar problems by coercing foreign corporations to register so that they would be subject to service and to revenue collection, late registration to obtain a certificate of authority fully satisfies the statutory scheme and will not bar suit by a foreign corporation, because there has been substantial compliance with the statutory scheme. OCGA § 1-3-1 (a); *McPherson v. City of Dawson*, 221 Ga. 861, 862 (148 SE2d 298) (1966); *Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 731-732 (48 SE2d 86) (1948); *Wigley v. Hambrick*, 193 Ga. App. 903, 905 (4) (389 SE2d 763) (1989); *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377, 378 (18 SE2d 57) (1941). Where a statute directs that a thing be done in a certain time without negative words prohibiting the subsequent performance, generally, the provision of time is directory only; where no injury results from such delay, subsequent performance is deemed substantial compliance with the statutory requirements. *O'Neal v. Spencer*, 203 Ga. 588 (2) (47 SE2d 646) (1948); *State of Ga. v. Battise*, 177 Ga. App. 583, 584 (340 SE2d 240) (1986). Further, in Ga. L. 1988, pp. 1070, 1225-1226, § 1, the General Assembly changed the language of former OCGA § 14-2-1421 (b) of the 1969 Georgia Corporate Code that provided "unless before commencement of the action a certificate of authority shall have been obtained by such corporation," no action can be brought at all. Ga. L. 1969, pp. 152, 197, § 76; *A.B.R. Metals &c. v. Roach-Russell, Inc.*, 135 Ga. App. 193 (217 SE2d 447) (1975), rev'd on other grounds, *Nat. Heritage Corp. v. Mount Olive Mem. Gardens*, 244 Ga. 240, 242 (260 SE2d 1) (1979).

The 1968 Georgia Business Corporation Code had provided prior to the 1969 amendment that: "[n]o foreign corporation . . . shall be permitted to maintain any action, suit or proceeding in any court of this State unless *either before or after commencement of the action it shall have obtained such a certificate*." (Emphasis supplied.) Ga. L. 1968, pp. 565, 790. "This section is based upon Model Act Section 117, with minor changes. It covers approximately the same ground once covered by Ga. Code Ann., former [Ga. Code Ann.] § 22-1506, but differs from the latter in two important respects: (1) Under subsection (b) of the new section, no foreign corporation transacting business in this State without a certificate of authority is entitled to maintain suit in the Georgia courts on any cause of action arising out of its business in Georgia. Once it obtains a certificate, however, a suit previously filed by it may be continued without refiling." Comment, 22 Code of Ga. Ann., p. 190, § 22-1421 (1968). Prior to 1968, there was no forum preclusion at all. Only with Ga. L. 1969, pp. 152,

196, § 76, did dismissal, despite late compliance, become part of the Georgia Business Corporate Code. However, under Ga. L. 1988, pp. 1070, 1225-1226, § 1, the statutory scheme returned to the pre-1969 statutory approach: prohibiting "maintaining a proceeding in any court in this state until it obtains a certificate of authority." See OCGA § 14-2-1502 (a). Such is a return to the pre-1969 law.

A "revising statute is in effect a legislative declaration that whatever is embraced in the new statute shall prevail, and whatever is excluded therefrom shall be discarded." (Citation and punctuation omitted.) *Thompson v. Ga. Power Co.*, 73 Ga. App. 587, 596 (37 SE2d 622) (1946); accord *George C. Carroll Constr. Co. v. Langford Constr. Co.*, supra at 261. Any reason for dismissal for continuing noncompliance ceased to exist at the moment of issue of the certificate of authority, and Health Horizons has substantially complied with the statutory scheme. Thus, the statutory purpose was satisfied by compelling the certificate of authority. Therefore, there no longer exists a legislative purpose in denial of the right to maintain an action, as late substantial compliance is recognized. See OCGA §§ 1-3-1 (c); 14-2-1501 (a); 14-2-1502 (a).

In *Tillett Bros. Constr. Co. v. Dept. of Transp.*, 210 Ga. App. 84, 86 (2) (435 SE2d 241) (1993), this Court applied the doctrine of substantial compliance, although the opinion did not use such terminology or cite OCGA § 1-3-1 (c), but reached the same results. A foreign corporation had a certificate of authority at the time of suit and at the time business was transacted in Georgia, but it had ceased to transact business in Georgia and did not maintain its certificate of authority at the time it brought a renewal action. This Court held that such facts were not grounds to dismiss the renewal action under OCGA § 14-2-1502 (a). Id.

A motion to dismiss under OCGA § 14-2-1502 (a) is a motion in abatement or a dilatory plea, which is not an adjudication on the merits. *Nat. Heritage Corp. v. Mount Olive Mem. Gardens*, supra at 242; *Manufacturers Nat. Bank &c. v. Tri-State Glass*, 201 Ga. App. 253 (410 SE2d 808) (1991); *Safwat v. U. S. Leasing Corp.*, 154 Ga. App. 341 (268 SE2d 395) (1980). Such a plea based upon OCGA § 14-2-1502 (a) is raised as an affirmative defense, which must be specially pled in the answer.[1] See OCGA § 9-11-8 (c); 9-11-9 (a); *Patterson v. Duron Paints of Ga.*, 144 Ga. App. 123, 124 (1) (240 SE2d 603) (1977); cf. *Gorrell v. Fowler*, 248 Ga. 801-802 (1) (286 SE2d 13) (1982). If a dilatory plea or a plea in abatement is curable under the Civil

---

[1] Under federal practice, State Farm would be deemed to have waived such defense by failure to timely raise it in the answer or other defensive pleadings. See *Morgan Guaranty Trust Co. &c. v. Blum*, 649 F2d 342 (5th Cir. 1981); *Kinetic Concepts v. Kinetic Concepts*, 601 FSupp. 496 (N.D. Ga. 1985).

Practice Act and the prior practice, then such defect constitutes an amendable defect. OCGA § 9-11-15 (a), (c); *Walton v. Walton*, 223 Ga. 85, 86-87 (3) (153 SE2d 554) (1967) (failed to plead jurisdiction); *Crown Laundry v. Burch*, 205 Ga. 211 (53 SE2d 116) (1949) (omission of prayer for process); *Leniston v. Bonfiglio*, 138 Ga. App. 151, 152-153 (1) (226 SE2d 1) (1976) (failure to plead sum due for service purposes); *Middlebrooks v. Daniels*, 129 Ga. App. 790 (201 SE2d 338) (1973) (condition precedent to suit); *Burrow v. Dickerson*, 108 Ga. App. 178, 180 (1) (132 SE2d 550) (1963) (improper prayer for process); *Purcell v. Hill*, 107 Ga. App. 85 (129 SE2d 341) (1962) (omission of prayer for process).

In this case, Health Horizons substantially complied with the registration requirements for a foreign corporation by obtaining a certificate of authority late. See *Dept. of Transp. v. Moseman Constr. Co.*, supra. By filing the amendment setting forth such certificate of authority, and under the liberal pleading provisions of the CPA, such amendment related back to the time of filing. *Leniston v. Bonfiglio*, supra; *Middlebrooks v. Daniels*, supra; see generally *Marler v. C & S Bank of Milledgeville*, 239 Ga. 342, 343 (236 SE2d 590) (1977). "The Rule 15 relation-back feature has also been applied where a condition precedent to the suit has been omitted, such as notice to a municipality, lack of service of process, and allegations as to venue. [Cits.]" *Foster & Kleiser, Inc. v. Coe & Payne Co.*, 185 Ga. App. 284, 286 (363 SE2d 818) (1987), rev'd on other grounds, *Coe & Payne Co. v. Foster & Kleiser, Inc.*, 258 Ga. 161 (366 SE2d 292) (1988). Therefore, the trial court erred in dismissing the complaint in this case.

*Case No. A99A0991*

Health Horizons filed an affidavit from Dr. Knott, which the trial court relied upon in denying the motion. Since State Farm's OCGA § 9-11-12 (b) (6) motion to dismiss led the trial court to consider matters outside the complaint, then "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56." OCGA § 9-11-12 (b); *American Car Rentals v. Walden Leasing*, 215 Ga. App. 621 (451 SE2d 537) (1994); *Zepp v. Mayor &c. of Athens*, 180 Ga. App. 72 (348 SE2d 673) (1986).

Under OCGA § 9-11-56 (e), the affidavit of Dr. Knott states that he is practicing medicine under his license and that he assigns his fees to Health Horizons for collection. State Farm contends that Health Horizons has made admissions in judicio in the complaint that it practices medicine, i.e., that it "furnishes health care services." If such statement constitutes an admission in judicio, then Health Horizons cannot present evidence to contravene such admis-

sion unless and until the admission is withdrawn by amendment. Thus, Dr. Knott's affidavit must be excluded, State Farm would have pierced Health Horizons' pleadings without any proper rebuttal evidence by the respondent.

State Farm contends that the trial court erred in denying its motion, because Health Horizons was engaged in the practice of medicine. Its basis for this position is what it contends was an admission in judicio, i.e., "furnishes health care services," that Health Horizons was engaged in the practice of medicine. We do not agree.

(a) "[F]urnishes health care services" is not a statement of fact but is an opinion or conclusion as to law, fact, or mixed question of both as to relationships and to a series of transactions or occurrences over time; it is a conclusory statement so broadly made that it may encompass the practice of medicine, physical therapy, nursing, practical nursing, some other form of health services for compensation, or furnishing of medical supplies and equipment. "Although admissions in judicio apply only to admissions of fact and do not apply when the admission is merely the opinion or conclusion of the pleader as to fact or law," such statement cannot constitute an admission in judicio, because it fails to be a statement of fact. *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517-518 (434 SE2d 63) (1993); accord *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, 194 Ga. App. 169, 172 (2) (390 SE2d 257) (1990); *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828, 829 (2) (360 SE2d 280) (1987); *Scott v. Jefferson*, 174 Ga. App. 651, 652 (1) (331 SE2d 1) (1985); *Aiken v. Dept. of Transp.*, 171 Ga. App. 154, 155-156 (319 SE2d 58) (1984).

(b) Even if "health care services" was a statement of fact, it does not mean that Health Horizons is engaged in the practice of medicine as defined by OCGA § 43-34-20 (3). However, "health care services" is defined in the Insurance Code, using such words, in OCGA § 33-20-3 (4)

> means the examination or treatment of persons for the prevention of illness or the correction or treatment of any physical or mental condition resulting from illness, injury, or other human physical problem and includes but is not limited to: (A) Hospital services which include the general and usual care, services, supplies and equipment furnished by hospitals; (B) Medical services which include the general and usual services and care rendered and administered by doctors of medicine, doctors of dental surgery, and doctors of podiatry; and (C) Other health care services which include appliances and supplies; nursing care by a registered nurse or a licensed practical nurse; care furnished by such other licensed practitioners as may be expressly approved by the

board of directors from time to time; institutional services including the general and usual care, services, supplies, and equipment furnished by health care institutions and agencies . . . other than hospitals; physiotherapy; ambulance services; drugs and medications; therapeutic services and equipment including oxygen and the rental of oxygen equipment; hospital beds; iron lungs; orthopedic services and appliances including wheelchairs, trusses, braces, crutches, and prosthetic devices including artificial limbs and eyes; and any other appliance, supply, or service related to health care.

Since the phrase "health care services" was used in a suit against an insurance company regarding the failure to pay for health care services rendered, then it clearly had the expansive statutory meaning. Therefore, the scope of meaning is so broad and expansive that it cannot be construed as having the narrow meaning ascribed to it by State Farm of practice of medicine as an admission in judicio. At most, such phrase creates a conflict in evidence as to the meaning.

The trial court admitted the affidavit of Dr. Knott by considering the affidavit of Dr. Knott; such admission of evidence in conflict to the purported admission in judicio is deemed as an amendment to conform to the evidence, which has the effect of withdrawing such admission in judicio. See OCGA § 9-11-15 (b); *Walker v. Jack Eckerd Corp.*, supra at 519-520; *Space Leasing Assoc. v. Atlantic Building Systems*, 144 Ga. App. 320, 327 (4) (241 SE2d 438) (1977).

(c) There is nothing either by statute or case law that prohibits a duly licensed physician in good standing or other health care professional who has a professional physician-patient relationship and has earned fees and incurred expenses for professional services rendered to his patient from assigning such choses in action to a for-profit corporation for purposes of administration, billing, and collection of such fees, because such corporation does not create, define, direct, limit, or interfere with the physician-patient relationship or the attendant obligations, duties, rights, or liabilities arising from such professional relationship. The corporation is not practicing medicine under such limited circumstances. See OCGA §§ 14-7-3; 14-7-4; 43-34-26 (a); 43-34-43; *Sherrer v. Hale*, 248 Ga. 793, 796 (285 SE2d 714) (1982); *Pearle Optical &c. v. State Bd. of Examiners in Optometry*, 219 Ga. 364 (133 SE2d 374) (1963).

*Sherrer v. Hale*, supra at 796, held that "[a]lthough it is true that a business corporation cannot lawfully practice one of the so-called 'learned professions,' [cit.], it does not follow that a corporation violating this prohibition is 'void.' " Thus, State Farm lacks standing to raise as a defense that Health Horizons was engaged in the practice

of medicine as a for-profit corporation, because such violation does not void any assigned contracts with it or any right of action for quantum meruit for services performed for which it had financial responsibility. Id. Further, only the Composite State Board of Medical Examiners or its designees have standing to take action against Health Horizons, if it was in fact practicing medicine as a corporation. See OCGA § 43-34-43; *Pearle Optical v. State Bd.*, supra.

(d) For the foregoing reasons, State Farm has failed to pierce the pleadings of Health Horizons to show that at least one essential element cannot be shown at trial. Health Horizons has, nonetheless, come forward with the affidavit of Dr. Knott, showing that there exist material issues of fact for jury trial. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Therefore, the trial court did not err in denying the motion.

*Judgment affirmed in part and reversed in part. Pope, P. J., concurs. Smith, J., concurs in judgment only.*

DECIDED JULY 29, 1999

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., Mundy & Gammage, John S. Husser*, for appellant.

*Powell, Goldstein, Frazer & Murphy, Elmer A. Simpson, Jr., George P. Watson, Linda G. Birchall, Richard W. White*, for appellee.