A04A0167. STRANGE et al. v. HOUSING AUTHORITY OF CITY
OF SUMMERVILLE.

(602 SE2d 185)

BARNES, Judge.

The Summerville Housing Authority ("Authority") filed a complaint seeking injunctive relief and a temporary restraining order against Lewis and Pat Strange, a husband and wife. The Stranges answered and counterclaimed for Open Records Act violations, among other things. After the parties completed discovery, the trial court granted summary judgment to the Authority on all counts. The Stranges appeal, asserting that the trial court erred in finding no material issues of fact. For the reasons that follow, we affirm in part and reverse in part.

The Authority in its complaint sought to prohibit the couple,

> their agents, employees or assigns from entering upon the premises of the Housing Authority, stopping on the roadways within the perimeter of the Housing Authority property and having any contact whatsoever with any member of the Housing Authority management or said management's families, and further barring the [Stranges] from requesting any further documentation from [the Housing Authority].

The Authority amended the complaint shortly thereafter to remove the portion of the complaint barring requests of records.

The Authority filed the complaint in response to what it deemed the Stranges' "peculiar behavior" and also their continued "trespass upon Housing Authority property." The Stranges answered asserting that the complaint was retaliatory "to punish [them] for their request for open records," and counterclaimed alleging slander, violation of the Open Records Act, civil rights violations pursuant to 42 USCA §§ 1983 and 1985, and civil conspiracy. Following an evidentiary hearing, the trial court granted the restraining order. Upon the Authority's subsequent motion for summary judgment, the trial court denied all of the Stranges' counterclaims, and issued an order permanently enjoining the couple from Authority property.[1] It is from

---

[1] The trial court held that "this injunction will not prevent [the Stranges] from exercising

this order that the Stranges filed a notice of appeal in the Supreme Court, which found that the equitable relief sought was ancillary to the underlying legal issues of "whether the Authority had a right to bar appellants from its property due to the nature of the instrumentalities brought on the property and whether appellee slandered appellants or violated their rights under 42 USCA §§ 1983 and 1985." The Supreme Court thus transferred the case to this Court. See *Beauchamp v. Knight*, 261 Ga. 608, 609 (409 SE2d 208) (1991).

The Stranges enumerate two errors on appeal: (1) whether the facts cited by the trial court in granting the permanent injunction were supported by the evidence, and (2) whether the trial court erred in granting summary judgment on the Stranges' civil conspiracy counterclaim.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "The movant has the original burden of making this showing. Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence. [Cit.]" (Punctuation omitted.) *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 392-393 (2) (469 SE2d 469) (1996). In rebutting this prima facie case, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial." OCGA § 9-11-56 (e). See also *Lau's Corp.*, supra.

While it is not clear how the relationship between the Stranges and the Authority began, it appears from the record that at some point the Stranges started attending Authority board meetings and inquiring into the appropriation of Authority money and other activities. The executive director of the Authority said that she became familiar with the couple in 1998 when "they asked to view our board of commissioner minutes for the past 12 years." Mr. Strange also established a relationship with some of the children who lived on the Authority properties. He gave them money for working and earning good grades, and according to Mr. Strange, the amount varied "according to how good their grades were[; the] most I ever gave one child was a hundred dollars." The children ranged in age from first graders

their right under the Open Meetings Act."

to sophomores in high school. Mr. Strange also bought four trampolines for four different families, took several children swimming at his residence, gave out pool passes, and gave several children a ride on a four-wheeler on Authority property.

The executive director of the Authority testified that much of the Stranges' behavior was inappropriate and some was prohibited on Authority property. She stated that the four-wheeler was not allowed on Authority property. She testified that in 1999 she made a report to DFACS concerning an allegation by one of the children that Mr. Strange had touched him inappropriately. The police dropped the investigation when the child denied the allegation. She also testified that the Authority had asked the Stranges to stop giving things to the children and congregating on Authority property, but they continued to do so. The director said that the couple had also been disruptive during board meetings. On October 21, 1999, the Authority's counsel sent the Stranges a letter requesting that they

> refrain entirely from giving housing authority resident children money, candy, parties, or any other token of his alleged philanthropy, whatsoever. On behalf of my client, I further request that your clients refrain entirely from gathering, congregating or otherwise assembling with housing authority resident children on Housing Authority common areas.

The director said that, despite the request, the couple came onto the property in June 2000, gave the children money, and installed trampolines on Authority property. Some residents expressed concern that the children could get hurt on the trampolines.

Mr. Strange said that the trampolines were gifts to four families who wanted them. He testified that when he was notified that the Authority had seized the trampolines, he attempted to remove them from the property, but the Authority would not release them. He also testified that he had brought his four-wheeler to the property on three occasions, and was only told not to give the children rides on the vehicle without helmets, so he bought helmets for them. He stated that even though he was aware that the Authority did not approve of his giving money to the children, he continued to do so. The record does not reflect that any of the parents of the children were involved in the Authority's request.

During this time, the Stranges also made several open records requests, including one on September 20, 1999, and another on October 21, 1999. The September request sought information regarding the alleged outcry against Mr. Strange from a minor residing on Authority property. On September 23, 1999, the Authority denied the request, responding that the information did not come under the

federal Freedom of Information Act; pertained to pending or potential litigation; and would disclose confidential investigative or prosecution material. The letter also noted that on September 17, 1999, the Stranges had asked in person to view the five-year comprehensive agency plan. It advised them to notify the Authority which documents they wanted to view and the Authority would respond within three days.

In the October request, the Stranges sought information regarding the use of the computers in the Authority's after-school program buildings, the policy for using the computers, and who had keys to the building. The Authority responded within three business days and said that the Stranges could view any information regarding their request by setting up an appointment. That same month, the Stranges also asked to view and copy the Authority's 1999 financial records. The Authority declined the request because its internal audit had not been performed and it did not want the documents misplaced or out of order.

In early 2000, the Stranges filed a complaint in federal court against the Authority alleging violation of the Open Records Act, which was dismissed for lack of jurisdiction. They then filed the complaint in Chattooga County Superior Court, which they later voluntarily dismissed.[2] On August 8, 2000, the Authority filed this complaint.

1. The Stranges contend that the trial court erred in granting a permanent injunction because the trial court's factual findings that they admitted bringing trampolines and a four-wheeler onto Authority property without permission were erroneous.

On appeal from the grant of a permanent injunction,

the standard of review is whether or not the trial court manifestly abused its discretion. A trial judge manifestly abuses his discretion when he grants an injunction adverse to a party without any evidence to support such judgment and contrary to the law and equity.

(Punctuation and footnotes omitted.) *Attaway v. Republic Svcs. of Ga.*, 253 Ga. App. 322 (558 SE2d 846) (2002). "[E]quitable relief is improper if the complainant has a remedy at law which is 'adequate,' i.e., 'as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.' [Cit.]" *Sherrer v. Hale*, 248 Ga. 793, 797 (2) (285 SE2d 714) (1982).

---

[2] Documentation relating to these complaints was not included in the record.

A person commits trespass when he knowingly and without authority enters upon the land or premises of another person after having received prior notice that such entry is forbidden. OCGA § 16-7-21 (b) (2); *Pope v. Pulte Home Corp.*, 246 Ga. App. 120 (539 SE2d 842) (2000). The phrase "premises of another person" includes property owned by the public or used for public purposes. *E. P. v. State*, 130 Ga. App. 512 (2) (203 SE2d 757) (1973).

> Equity will not interfere to restrain a trespass, unless the injury is irreparable in damages, or the trespasser is insolvent, or other circumstances exist which, in the discretion of the court, render the interposition of the writ necessary and proper, among which shall be the avoidance of circuity and multiplicity of actions.

OCGA § 9-5-4. If there is a continuing trespass, it may also be enjoined in equity. *Courtesy Leasing v. Christian*, 266 Ga. 187 (465 SE2d 443) (1996).

The Authority complained that the Stranges had trespassed on its property and engaged in improper activity, would continue to do so "ad infinitum," that the "residents may suffer immeasurable and irreversible harm," and that it had no adequate legal remedy.

In granting the permanent injunction, the trial court found that

> [t]he [Authority] has instructed the [Stranges] not to enter the Housing Authority property. Nevertheless, the Defendants entered onto the property, and in doing so have brought four-wheelers and erected trampolines. Equity will enjoin continuing trespasses. *Pope v. Pulte Home Corporation*, [supra,] 246 Ga. App. 120 (2000). The Court further finds that the instrumentalities which the Defendants have brought onto the Housing Authority property are of such a nature that their use without proper supervision and safety precautions may lead to significant injuries.

"Courts cannot restrain that which has already been done; and it appearing from all of the allegations of the petition that the acts . . . complained of were fully consummated, there were no grounds for [an] injunction." *Whipkey v. Turner*, 206 Ga. 410, 415 (1) (57 SE2d 481) (1950); see also *Sandt v. Mason*, 208 Ga. 541, 546 (1) (67 SE2d 767) (1951). Moreover, courts of equity jurisdiction will not intervene to "allay mere apprehensions of injury, but only where the injury is imminent and irreparable and there is no adequate remedy at law." (Citation and punctuation omitted.) *Morton v. Gardner*, 242 Ga. 852, 856 (252 SE2d 413) (1979).

The record reflects that in October 1999, the Authority sent the Stranges a letter requesting that they "refrain entirely from giving housing authority resident children money, candy, parties, or any other token of his alleged philanthropy," and "refrain entirely from gathering, congregating or otherwise assembling with housing authority resident children on Housing Authority common areas." The record does not demonstrate that the Authority ever prohibited the Stranges from coming onto Authority property. Instead, it prohibited the couple from congregating on its property with the children and giving them gifts. While the Authority's concern for the safety of the children on its property is understandable, other than the alleged outcry which the child later denied, the record contains no evidence that the couple presented any threat to the children. Moreover, there are no complaints from the parents of these children. In fact, there is no evidence at all that the parents were even made aware of the Authority's concerns regarding the Stranges' interaction with their children.

In granting the injunction, the trial court enumerated that "instrumentalities which the Defendants have brought onto the Housing Authority property are of such a nature that their use without proper supervision and safety precautions may lead to significant injuries." There is no indication, however, that the Stranges are still bringing "instrumentalities" — the trampolines and four-wheeler — onto the property. The trampolines were removed, and there is no evidence that Strange still takes the children for rides on the four-wheeler.[3] The Authority described its request for equitable relief as a "prophylactic measure" to keep the Stranges from trespassing. But, as noted above, courts will not intervene to allay apprehensions of injury. *Morton v. Gardner,* supra, 242 Ga. at 856.

Further, the record contains no evidence that the Authority instructed the Stranges not to trespass on Authority property, or evidence showing that they ignored such a request. There is no evidence that the Stranges threatened to trespass on the Authority's property in the future. In other words, the record contains no evidence of a continuing trespass. The evidence does show that the Authority has placed the Stranges on its banned list, which authorizes their arrest for criminal trespass should they come onto Authority property.

Accordingly, because the Authority has an adequate remedy at law that has not been exhausted, it is not entitled to equitable relief. *Holmes v. Bd. of Commrs.,* 271 Ga. 206 (517 SE2d 788) (1999);

---

[3] Strange testified at the hearing on the restraining order that he was told only that the children should not be allowed to ride without helmets.

compare *Lanier v. Ocean Pond Fishing Club*, 253 Ga. 549, 550 (2) (322 SE2d 494) (1984) (injunction proper where appellant continued to disregard appellee's repeated requests that he not boat or fish upon its lake property). Therefore, we find that the trial court abused its discretion by issuing the permanent injunction.

2. The trial court also erred in declaring moot the Stranges' counterclaim for Open Records Act violations. The trial court found that "shortly after Defendants filed their first amendment to their counterclaim, the Plaintiff amended its complaint to withdraw the prayer for relief seeking to enjoin Defendants from filing open records requests," and thus "[t]he Defendants' counterclaim was rendered moot. . . ." The trial court noted that the Stranges were given complete access to the Authority's records thereafter, and that "[n]o subsequent Open Records Act violations are alleged."

The Open Records Act, OCGA § 50-18-70 et seq., permits any citizen of this state to inspect public records of an agency, as defined in OCGA § 50-18-70 (a), except those that are prohibited or exempted from public inspection by law or court order. *Bowers v. Shelton*, 265 Ga. 247, 249 (2) (453 SE2d 741) (1995). The very purpose of the Open Records Act "is to encourage public access to government information and to foster confidence in government through openness to the public." *McFrugal Rental of Riverdale v. Garr*, 262 Ga. 369 (418 SE2d 60) (1992). Compliance with the Act is not discretionary, but mandatory. OCGA § 50-18-70 (b); *Bowers v. Shelton*, supra, 265 Ga. at 248 (1). In a suit under the Act, the inquiries are whether the sought records are "public records," and if so, whether they are protected from disclosure by law, or should be protected by court order because their disclosure would invade individual privacy. *Hardaway Co. v. Rives*, 262 Ga. 631, 632-633 (1) (422 SE2d 854) (1992). OCGA § 50-18-73 (b) authorizes an award of attorney fees and expenses of litigation in actions brought to enforce the statute if the court determines that the action constituting a violation of the statute was completely without merit as to law or fact. *McBride v. Wetherington*, 199 Ga. App. 7, 8 (403 SE2d 873) (1991).

In their answer and counterclaim, the Stranges claimed that they "have on several occasions requested copies of records of [the Authority], to which Defendants are entitled under Georgia law. [The Authority has] refused or failed to comply with Defendants' lawful request." The court incorrectly held that the Stranges' counterclaim was based on the prayer for relief contained in the Authority's original complaint. A close reading reveals that the counterclaim was not only in reaction to the Authority's original complaint seeking to restrict the Stranges from filing open records requests, but also because of prior alleged violations of the act. In fact, in a January 5, 2000 letter from the Authority's counsel to the Stranges' counsel, the

Authority referred to an open records request the Stranges had made on October 27, 1999, indicating that it was renewing its December 15, 1999 verbal offer to allow the Stranges access to the information after a February 2000 audit was completed.

The factual issues presented by this counterclaim are whether the Authority violated the Open Records Act by not producing the documents the Stranges requested before they hired an attorney, and whether the violation, if any, lacked any merit as to law or fact. If the evidence is ambiguous or doubtful, the courts must give to the party opposing a motion for summary judgment the benefit of all reasonable doubts and all favorable inferences, and construe the evidence most favorably to the party opposing the motion. *GMS Air Conditioning v. Dept. of Human Resources*, 201 Ga. App. 136, 138-139 (410 SE2d 341) (1991). Because the Authority failed to show that these factual issues regarding the Stranges' Open Records Act claim must be decided in its favor as a matter of law, the trial court erred in granting it summary judgment on this claim.

3. The Stranges also complain that the trial court erred in granting summary judgment as to the Authority on their civil conspiracy claim.

> The law is that a conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. Where the act of conspiring is itself legal, the means or method of its accomplishment must be illegal.

(Citations and punctuation omitted.) *Savannah College of Art &c. v. School of Visual Arts &c.*, 219 Ga. App. 296, 297 (464 SE2d 895) (1995).

The underlying tort the Stranges alleged was slander. They do not, however, appeal the grant of summary judgment to the Authority on their slander claim, only the dismissal of their civil conspiracy claim. Since the Stranges' civil conspiracy claim cannot stand without the underlying tort of slander, the trial court did not err in granting summary judgment to the Authority on this issue. *Dyer v. Honea*, 252 Ga. App. 735, 738 (2) (557 SE2d 20) (2001).

*Judgment affirmed in part and reversed in part. Mikell, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JULY 9, 2004.

*W. Benjamin Ballenger*, for appellants.
*Jenkins & Olsen, Jeffrey M. Hood, Brandon L. Bowen*, for appellee.