**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

January 20, 2022

# In the Court of Appeals of Georgia

A21A1509. NAYANI v. HASSANALI et al.

MCFADDEN, Presiding Judge.

Kamal Nayani appeals from the order granting partial summary judgment to the defendants in his lawsuit alleging, among other things, that Amina Hassanali committed fraud to induce him to purchase shares in her professional corporation, Amina Medical Consultant, P.C. We hold that Nayani may not pursue his claims because his contract to purchase shares in the professional corporation is void. So we affirm.

1. *Factual and procedural background.*

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law.' OCGA § 9-11-56 (c)." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "On appeal from the denial or grant of summary judgment, the appellate court must conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Newstrom v. Auto-Owners Ins. Co.*, 343 Ga. App. 576, 577 (1) (807 SE2d 501) (2017) (citation and punctuation omitted).

So viewed, the record shows that Hassanali is a primary care physician. In 1999 or 2000, she organized a professional corporation, Amina Medical Consultant, P.C., to practice medicine. In April 2018 Nayani and his wife approached Hassanali about entering a partnership. The three agreed that Hassanali would sell Nayani a 40 percent ownership interest in her professional corporation and that she would retain a 60 percent ownership interest.

On May 4, 2018, Nayani, Hassanali, Amina Medical Consultant, and Hassanali's company Amina Property, LLC, the medical practice's landlord, entered an agreement for the sale of shares in and the management of Amina Medical Consultant. Nayani had given the terms to an attorney, who drafted the agreement. Hassanali did not have her own attorney.

2

Under the agreement, Hassanali sold Nayani 40 percent of the professional corporation for $20,000. The agreement provided that Hassanali would become the medical director of the practice with a salary of $8,000 per month, pro rated should she work more or fewer than 13 shifts per month, and that Nayani would become the managing director of the practice, with a salary of $6,000 per month. The agreement further provided that Hassanali would receive 60 percent of the profits and Nayani would receive 40 percent of the profits.

The parties amended the agreement in November 2018 and again in January 2019.

It was not long before Hassanali regretted entering the agreement and decided that she was not going to follow it. In January 2019, Hassanali told Nayani and his wife that if the practice did not show a profit within the next two months, she would take back the management of the practice.

Hassanali took over in April 2019, instructing her staff no longer to give patient bills to Nayani for processing. She changed the locks on the business because Nayani and his wife had removed from the premises the keys to the cash box and the mailbox. She also removed Nayani's access to the business's checking account.

On April 30, 2019, Nayani filed the complaint against Hassanali, Amina Medical Consultant, and Amina Property. He asserted claims of fraud and breach of contract against Hassanali and Amina Property; a claim of breach of fiduciary duty against Hassanali; a demand for an accounting against all three defendants; and a claim for the judicial dissolution of Amina Medical Consultant.

Hassanali and Amina Property moved for partial summary judgment. The trial court granted summary judgment to the defendants on Nayani's claims for fraud against Hassanali and Amina Property; breach of contract against Amina Property; breach of fiduciary duty against Hassanali; an accounting as to all defendants; and judicial dissolution of Amina Medical Consultant. Nayani filed this appeal; he does not challenge the grant of summary judgment on his fraud claim against Amina Property.

We hold that the agreement for the purchase of shares in the professional corporation is void because it violates Georgia law. And because the agreement is void, Nayani cannot pursue his claims. So we affirm.

2. *Law of professional corporations*.

Under the Georgia Professional Corporation Act, OCGA §§ 14-7-1 through 14-7-7, "[s]hares in a professional corporation may only be issued to, held by, or

transferred to a person who is licensed to practice the profession for which the corporation is organized and who, unless disabled, is actively engaged in such practice as an active practicing member of the issuing corporation. . . ." OCGA § 14-7-5 (a). So the agreement at issue — which was founded on a promise to transfer shares in Amina Medical Consultant, a professional corporation for the practice of medicine, to Nayani, who is not licensed to practice medicine — violates OCGA § 14-7-5 (a).

> [W]here a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable. Where a statute enacts, for the purpose of securing a more effectual compliance with its requirements in respect to the licensing of certain occupations, that no one shall engage in or carry on any such occupation until he shall have obtained the license as provided by law, it is an express prohibition without more particular words.

*Moore v. Dixon*, 264 Ga. 797, 799-800 (2) (452 SE2d 484) (1994) (citations and punctuation omitted). Accord *Ga. Cent. Credit Union v. Weems*, 157 Ga. App. 439, 440 (1) (278 SE2d 88) (1981). See also OCGA § 13-8-1 ("A contract to do an . . .

5

illegal thing is void."). In other words, a contract that is only permitted to be entered into by a person holding a license issued as a regulatory measure is void if the person did not hold such a license at the time the contract was entered into. *JR Constr./Electric, LLC v. Ordner Constr. Co.*, 294 Ga. App. 453, 454 (669 SE2d 224) (2008).

"Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent can not be made the ground of a successful suit [and] are against public policy." *Orkin Exterminating Co. v. Dewberry*, 204 Ga. 794, 809 (2) (51 SE2d 669) (1949) (citation and punctuation omitted), overruled in part on other grounds in *Barry v. Stanco Communications Products,* 243 Ga. 68, 71 (3) (252 SE2d 491) (1979). And such contracts "will not be enforced even if the defendant fails to raise this issue as an affirmative defense." *Ga. Receivables v. Kirk*, 242 Ga. App. 801, 802 (2) (531 SE2d 393) (2000).

Nayani argues that even if the law prohibits him from being an owner of the professional corporation, that does not mean that the parties' agreement is void, given that the parties acted as partners for a year. But he does not explain how the parties' business relationship saved the agreement from being illegal.

6

Nayani argues that the agreement required the parties to cooperate, so they could have converted the professional corporation into a corporation for profit. But, again, he does not explain how Hassanali's promise (in the void agreement) to cooperate saved the agreement from being illegal.

Nayani argues that under OCGA § 14-7-5 (e), the professional corporation would automatically become a for-profit corporation by operation of law. That subsection of the Act provides:

> If a professional corporation at any time ceases to have a shareholder licensed or otherwise authorized to practice and actually practicing, the profession for which the corporation is organized, or if a professional corporation does not redeem, cancel, or transfer the shares of a disqualified, retired, or deceased person in accordance with this Code section, the corporation shall cease to be a professional corporation and shall operate as a corporation for profit organized under Chapter 2 of this title *for the sole purpose of liquidation*. The corporation may at any time after it ceases to be a professional corporation change its purpose by amending its articles.

OCGA § 14-7-5 (e) (emphasis added). By its terms, however, that subsection simply allows a professional corporation that does not redeem, cancel, or transfer the shares of a disqualified person to operate as a corporation for profit "for the sole purpose of liquidation." Contrary to Nayani's argument, the subsection does not automatically

7

convert a professional corporation into a for-profit corporation that can continue in business.

Finally, Nayani argues that under Georgia Supreme Court authority, the parties' agreement is not void. He relies on *Sherrer v. Hale*, 248 Ga. 793 (285 SE2d 714) (1982), but *Sherrer* is distinguishable. In that case, our Supreme Court affirmed an interlocutory injunction that ordered the reversion of a professional corporation into a traditional business corporation and the reinstatement of a non-professional's shareholder interest in that traditional business corporation. Id. at 793. The defendant, a licensed physician, had converted his business from a professional corporation into a traditional business corporation in order to permit the non-professional plaintiff to become a shareholder. Id. Some years later, the defendant-physician received legal advice that the conversion of the business from a professional corporation to a business corporation was void because only a medical professional corporation can be involved in the practice of medicine. Id. at 794. So the defendant-physician declared the plaintiff's shares void and converted the company back into a professional corporation. Id. at 795. In affirming the plaintiff's interlocutory injunction, the Court held:

8

It is not against the public policy of this state for a professional corporation to convert to a business corporation; it is against the public policy for a business corporation to perform acts which constitute the practice of medicine. Thus, although the acts of a corporation may be declared void as illegal and against public policy, and in some instances such acts may be enjoined, the corporation itself does not cease to be a corporation.

Id. at 797 (1) (citation omitted). Here, of course, Amina Medical Consultant has always been a professional corporation. And we hold, not that the professional corporation is void, but only that the contract for the sale of shares in the professional corporation to a non-professional is void. So *Sherrer* does not support Nayani's argument.

We observe that the Act contemplates a procedure for a professional corporation to follow when a shareholder is disqualified. It provides that:

[t]he shares held by a shareholder . . . who is disqualified as a shareholder under [OCGA § 14-7-5 (a)] shall be . . . redeemed, canceled, or transferred [to a person authorized to hold them] within 90 days after the disqualification becomes final. In the absence of an article or bylaw provision or an agreement providing for the redemption or transfer of such shares or, if the shares are not redeemed or transferred pursuant to such a provision or agreement within the required period of time, the corporation is authorized to and shall cancel the shares on its books at

9

the termination of the required period. If valuation and payment terms are not fixed under such an existing provision or agreement and are not agreed upon either prior to or at any time after the termination of the required period, the fair value of the redeemed or canceled shares shall be determined and paid in the same manner as if the . . . disqualified shareholder, were a shareholder entitled to valuation and payment for his shares under Code Section 14-2-1327.

OCGA § 14-7-5 (c). But Nayani has not asserted a claim for relief under this subsection.

So keeping in mind that the parties' agreement is void and unenforceable, we address Nayani's arguments.

3. *Claims against Hassanali.*

(a) *Fraud.*

Nayani argues that the trial court erred in granting summary judgment on his fraud claim against Hassanali because he has pointed to evidence that Hassanali intentionally made false representations, one to induce him to enter the agreement and three in the agreement itself.

The illegality of the contract bars this claim. "(T)he test for determining whether a demand connected with an illegal transaction is capable of enforcement at law is whether plaintiff requires any aid from the illegal transaction to establish his

case." *Five Star Athlete Mgmt. v. Davis*, 355 Ga. App. 774, 778 (1) (845 SE2d 754) (2020) (citation and punctuation omitted). Nayani's entire fraud claim depends upon the illegal contract. So Hassanali was entitled to summary judgment on the fraud claim.

(b) *Breach of fiduciary duty*.

Nayani argues that even if the parties' contract is void, Hassanali owed him a fiduciary duty, so the trial court erred by granting summary judgment on the breach of fiduciary duty claim. We disagree.

"A claim for beach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. The party asserting the existence of a fiduciary or confidential relationship bears the burden of establishing its existence." *AgSouth Farm Credit, ACA v. West*, 352 Ga. App. 751, 755 (1) (835 SE2d 730) (2019) (citations and punctuation omitted).

Nayani claims as the source of the fiduciary duty the parties' business relationship. Specifically, he argues that Hassanali, as a majority shareholder in the professional corporation, owed a fiduciary duty to Nayani, as a minority shareholder in the professional corporation. This claim depends upon the establishment of a

11

shareholder relationship arising from the illegal contract. Alternatively, he argues that Hassanali owed him a fiduciary duty that arose from them acting as partners. But he cites no authority to support his contention that the parties' relationship premised on the void contract became a partnership. Nayani has not shown that the trial court erred in granting summary judgment on Nayani's breach of fiduciary duty claim.

4. *Breach of contract claim against Amina Property*.

Nayani appeals the grant of summary judgment to Amina Property on his breach of contract claim. He argues that Amina Property breached a provision of the sale agreement that required it to amend its lease with Amina Medical Consultant to reduce the amount of rent. He also argues that Amina Property unlawfully locked him out of the premises.

Nayani's claim arising from Amina Property's failure to amend the lease with Amina Medical Consultant "requires . . . aid from the illegal transaction to establish his case[,]" *Five Star Athlete Mgmt.*, 355 Ga. App. at 778 (1) (citation and punctuation omitted), because any interest Nayani might have in the lease would stem from his position as a shareholder in Amina Medical Consultant. So he may not pursue this claim.

As for the alleged breach for locking Nayani out of the premises, the lease was between Amina Property as landlord and Amina Medical Consultant as tenant. Nayani was not the tenant and has pointed to nothing in the record that shows that he had the right to possess the property or that the tenant was ever locked out. So he fails to point to evidence creating a question of fact on this issue. See *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 804-805 (689 SE2d 843) (2009) (defendant could lock out plaintiff from premises, as plaintiff was not a tenant).

We affirm the grant of summary judgment on this claim.

5. *Claim against all three defendants for an accounting and claim for dissolution of Amina Medical Consultant*.

Nayani challenges the grant of summary judgment on his claims for an accounting and for the dissolution of Amina Medical Consultant. His only argument is that, because the trial court granted summary judgment on these claims "for the same reason as the breach of fiduciary duty," and because the grant of summary judgment on the breach of fiduciary duty claim was erroneous, we should also reverse the grant of summary judgment on these claims. As we affirm the grant of summary judgment on the breach of fiduciary duty claim, Nayani's argument presents nothing for review.

13

*Judgment affirmed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*